**BOARD OF ADJUSTMENTS, BOURBON COUNTY, Appellant,**

v.

**Mary BROWN, d/b/a Clintonville Auction House ,Appellee.**

**No. 96–CA–001913–MR.**

Court of Appeals of Kentucky.

June 5, 1998.

John J. Brady, Paris, for Appellant.

Jack Martin Goins, Paris, for Appellee.

Before GUIDUGLI, JOHNSON and SCHRODER, JJ.

JOHNSON, Judge.

The Bourbon County Board of Adjustments (the Board) has appealed from the judgment of the Bourbon Circuit Court entered on June 5, 1996, which reversed the Board's determination that the auction house operated by the appellee, Mary Brown (Brown), constituted an illegal non-conforming use. We affirm.

The Clintonville Auction House has been in operation since 1978 or 1979 on property zoned Commercial B–2 under the Bourbon County Zoning Ordinance. There is no dispute that Brown's use of the property as an auction house is not a permitted use under the B–2 zone, and that it came into existence after the adoption of the zoning ordinance. However, because the auction house has been in "continuous existence for a period of ten (10) years, and [ ] has not been the subject of any adverse order or other adverse action" during that period, it is "deemed a nonconforming use", "governed" by Kentucky Revised Statutes (KRS) 100.253(2). KRS 100.253(3).

In order to appease persons residing near the auction house and to meet the needs of her customers, Brown sought the Board's approval to build a parking lot on property near, but not contiguous to, her auction house property. The tract on which Brown proposed to construct the parking lot is zoned R–1. The Board met on June 12, 1995, to consider Brown's application for an enlargement of the existing non-conforming use. Also on the Board's agenda was an issue of whether the auction house had lost its valid nonconforming status. The Board listened to the complaints of several persons who reside near the auction house. These complaints primarily centered on parking concerns and the unruly behavior of some of the children of Brown's patrons.

. The Board concluded that Brown's use of the property was "illegal" and "not in compliance with the zoning ordinance of Bourbon County" and ordered her to immediately "cease and desist" operating the auction house. The findings of the Board in support of its action are as follows:

4. The property at 128 Austerlitz Road was used as a small grocery store until 1979 when its use was changed to that of an auction house operating approximately two (2) days per week. It continued to be so used until 19__ when the structure on the premises was substantially enlarged to accommodate larger auctions without seeking Board of Adjustment approval or seeking a Certificate of Zoning Compliance (Section 4.13 of Bourbon County Zoning Ordinance).

5. The illegal use of the property at 128 Austerlitz Road as an auction house began in 1979 and continued until 1988 when such use was abandoned by the unapproved expansion and enlargement of the existing facility and a new illegal, larger auction house use was begun.

The evidence of enlargement underpinning the Board's findings established that Brown enclosed the front porch of the building with siding to add a bathroom and that she increased the number of auctions from two each week to three. The Board also found that the proposed use of the property at 122 Austerlitz Road as a parking lot was not a permitted use under the zoning ordinance.

Brown appealed to the Bourbon Circuit Court pursuant to KRS 100.347(1). The circuit court affirmed the Board's determination that Brown could not construct a parking lot upon her R–1 zoned lot. Brown has not further challenged the propriety of that ruling. However, the circuit court also held that the Board erred as a matter of law in its determination that the increase in the number of auctions and the repairs and renovations to the porch constituted an impermissible extension or enlargement of the non-conforming use as contemplated by KRS 100.253(2). This appeal followed the circuit court's denial of the Board's motion for reconsideration.

◼ The sole argument presented by the Board is that the circuit court erred in sub-

stituting its findings and judgment for that of the Board. The Board has cited many cases which describe the scope of judicial review of a decision of an administrative body. The scope of judicial review in these matters is quite settled and primarily concerns issues of arbitrariness. *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission,* Ky., 379 S.W.2d 450, 456 (1964). The reviewing court should determine "whether the agency acted in exercise of its statutory powers," whether it afforded those affected by its order procedural due process, and whether its action "is supported by substantial evidence." *Id.See also Commonwealth, Transportation Cabinet, Department of Vehicle Regulation v. Cornell,* Ky.App., 796 S.W.2d 591, 594 (1990), and *Danville–Boyle County Planning and Zoning Commission v. Prall,* Ky., 840 S.W.2d 205, 208 (1992).

■ Having carefully reviewed the record, it is apparent to this Court that the Bourbon Circuit Court did not substitute its findings for those of the Board. There were few factual disputes to be resolved and the circuit court accepted the Board's factual findings as binding. However, the circuit court determined as a matter of law that the physical changes Brown made to the auction house and the increase in the number of auctions were not of the character or quality contemplated by KRS 100.253(2) to constitute an "enlargement or extension of a nonconforming use beyond the scope and area of its operation[.]" The circuit court did not make a conclusory determination in this regard, but rendered a thoughtful and reasoned opinion supported with reference to several legal authorities.

■ The portion of KRS 100.253(2) which is pertinent to this appeal reads as follows:

The board of adjustment shall not allow the enlargement or extension of a nonconforming use beyond the scope and area of its operation at the time the regulation which makes its use nonconforming was adopted, nor shall the board permit a change from one nonconforming use to another unless the new nonconforming use is in the same or a more restrictive classification

. . . .

The Board has not offered any authority to support its conclusion that Brown's modification of and repairs to the auction house constituted an enlargement or extension of its nonconforming use. The Board has not addressed any of the authorities relied upon by the circuit court; it has not suggested where the circuit court's application of the facts to the law is flawed; it has not attempted to undermine the circuit court's reasoning or its legal conclusion that enclosing an area "sharing a common roof with the rest of the building" and adding siding are not "impermissible extension[s] of a non-conforming use." The Board merely contends that the circuit court "came to a different conclusion than the Board" without having determined that the Board's action was arbitrary. It is not, however, necessary for the circuit court to have stated the obvious. The decision of the Board adversely affected Brown's property interest. If that decision is erroneous as a matter of law, it is inherently arbitrary. *American Beauty Homes Corp., supra.* See also *Transitions, Incorporated v. Board of Zoning Adjustment of the City of Ashland,* Ky.App., 729 S.W.2d 459 (1987).

Having reviewed the authorities upon which the circuit court relied, we hold that it correctly determined that the Board erred in its determination that Brown had enlarged the auction house. Of particular significance is the holding in *A.L. Carrithers & Son v. City of Louisville,* 250 Ky. 462, 469–470, 63 S.W.2d 493, 497 (1933), as follows:

The extending the walls of the building so as to enclose space for the relocating the can-washing and by-products rooms is not a vital and substantial change of the building in its characteristic or of the fundamental purpose of its creation, nor is it a change of such a nature as materially affects the realty itself, or its use, or the health, morals, or general welfare of the zoned district. (citations omitted) . . . "Structural alterations" intended to be prohibited by the zoning ordinance are the changing an old building in such a way as to convert it into a new or substantially different structure.

*See also Goodrich v. Selligman,* 298 Ky. 863, 183 S.W.2d 625 (1944). Further, *Carrithers* states that it is inappropriate to utilize a "zoning ordinance dealing with structural alterations" as a pretext "to require the cessation of a prohibited business or a prosecution to abate a nuisance[.]" 250 Ky. at 466–467, 63 S.W.2d at 495. Clearly, Brown's neighbors would like to eliminate the thrice weekly auctions. However, Brown's enclosure of the porch to provide patrons with restroom facilities does not justify the Board's determination that the property lost its status as a legal non-conforming use.

Accordingly, the judgment of the Bourbon Circuit Court is affirmed.

All concur.